RAYMOND D. ANAYA AND DELORES ANAYA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Anaya v. Commissioner
Docket No. 17129-88
United States Tax Court
T.C. Memo 1991-91; 1991 Tax Ct. Memo LEXIS 110; 61 T.C.M. (CCH) 2040; T.C.M. (RIA) 91091; March 4, 1991, Filed *110 Decision will be entered under Rule 155. John Leeper, for the petitioners. William F. Burbach, for the respondent. DRENNEN, Judge. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined the following deficiencies in and additions to petitioners' Federal income taxes: Additions to Tax Year
Deficiency
Sec. 6661 [1]
Sec. 6653(b)(1)
1983
$ 7,502  $ 1,875  $ 3,751  1984 7,346   1,836   3,673  1985 5,016   1,254   2,508  After concessions, the remaining issues for decision are (1) whether and to what extent unexplained deposits constitute taxable income to petitioners during 1983, 1984, and 1985; (2) whether certain guaranteed payments that petitioners received from a partnership during 1983, 1984, and 1985 constitute taxable income; (3) whether *111 petitioners failed to include in their computation of taxable income their distributive share of certain partnership income/loss and the amount of that income/loss during each of the years at issue; (4) whether certain bartering income constitutes taxable income to petitioners in the amounts of $ 2,000 in 1984 and $ 400 in 1985; (5) whether petitioners are liable for self-employment tax for the taxable years 1983, 1984, and 1985; (6) whether petitioners are liable for additions to tax under section 6653(b)(1); (7) whether petitioners are liable for the additions to tax under section 6661; (8) whether the statute of limitations bars assessment and collection of petitioners' tax liability for the taxable year ending December 31, 1983; and (9) whether petitioner Delores Anaya is entitled to "innocent spouse" relief under section 6013(e). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Unless otherwise indicated, all references to petitioner are to petitioner husband, Raymond. Petitioners resided in Las Cruces, New Mexico, at the time their petition herein was filed. *112 Petitioners have been married since 1981 and supported at least two children during the years at issue. Petitioners timely filed their Federal income tax returns for the years in issue. The only income items reported on these three returns were the W-2 wages earned by petitioner wife, Delores. Delores reported income from her employment with the Federal Government in the amounts of $ 9,732, $ 10,753, and $ 14,335 for taxable years 1983, 1984, and 1985, respectively. In 1983 a loss of $ 2,568 was also reported from petitioner's partnership interest in A & A Tire Company. The partnership was not mentioned on either the 1984 or 1985 return. The only other items of financial information listed on the returns were residential energy credits claimed in 1984 and 1985. Since 1978 petitioner and his two brothers, Tony and Joe, each have been one-third partners in A & A Tire Company (hereinafter referred to as A & A Tire or the partnership) located in Las Cruces. A & A Tire was in the business of selling tires and batteries, and providing automotive repair and detailing services. The partnership operated out of a building owned by the partnership which had an office and a shop with *113 three bays. A & A Tire did not maintain records of its partners' respective capital contributions. Except for A & A Tire's one-page annual profit and loss statements, no books or records reflecting depreciation and other financial and/or accounting data regarding A & A Tire's business operations during the years in question have been made part of the record before us. The record does not contain any of the monthly worksheets that were allegedly prepared by the partnership nor any of the partnership tax returns that were allegedly prepared but never filed. During the years in question, A & A Tire maintained various bank accounts to which deposits were made and from which business expenses were paid. Petitioner's brother Tony also deposited money from the partnership into his personal bank accounts and petitioner's brother Joe took his guaranteed payments prior to depositing checks from customers he personally serviced. Tony also paid many expenses of the partnership from his personal accounts, commingled with payments for personal expenses. Petitioner worked between 40 and 50 hours per week at A & A Tire. Petitioner handled mechanical work and detailing for the partnership. *114 Tony was the managing partner and was in charge of handling the financial aspects of the business including partnership bank deposits, expense payments, and the preparation of annual profit and loss statements. Joe serviced A & A Tire customer needs, primarily for one large customer. All three partners had access to A & A Tire's bank accounts. The partnership, however, was not free from debt during the relevant time period. In 1978, Joe, Tony, and Eva (Tony's wife) signed a business loan note for $ 43,000 for purposes of acquiring partnership property. In addition to the building owned by A & A Tire, the partnership also owned various pieces of equipment used for automotive repair and detailing. In 1983 the A & A Tire partners and their spouses signed a mortgage on this building to secure a $ 22,000 note. The proceeds of this loan were used to purchase a parcel of land located next to the partnership's tire shop. The partnership also maintained credit lines with various inventory suppliers, which generated accounts payable. Petitioner received annual guaranteed payments from A & A Tire which he deposited into his bank accounts in amounts totalling $ 6,678 in 1983, $ 6,402 *115 in 1984, and $ 7,200 in 1985. At the end of each taxable year petitioner also received his one-third share of partnership profits, if any. Petitioner failed to report any of the guaranteed payments or his distributive share of partnership profits on his Federal income tax returns for the years at issue. Petitioners' lifestyle during the years in issue was lavish in comparison with their reported income. In 1983 petitioners sold their trailer home residence and received proceeds from the sale of their trailer home during each of the years at issue. They then built and moved into a spacious new home on the outskirts of Las Cruces. Petitioner served as general contractor for the building of the new home which, with no allowance for a contractor's fee, cost $ 91,000. This home was appraised at $ 114,000 in 1983 and had a mortgage on it. [2] The amount of petitioners' monthly mortgage payments approximated $ 800 to $ 900, which was at least $ 200 more than Delores' take-home pay. *116 Delores drove a Corvette with personalized license plates. This automobile was a 1982 model Corvette which was purchased during the latter part of 1982. Petitioners financed the purchase of the Corvette with a $ 6,000 cash downpayment and executed a note in the amount of not less than $ 15,523 which required monthly payments of at least $ 323. Petitioners took several vacations during the years at issue including a 1-week vacation to Hawaii in 1984, a 1-1/2 week vacation to the Bahamas in 1985, annual trips to Las Vegas, and frequent trips to California to visit relatives. Petitioners continued to improve their lifestyle and their property during the years at issue. They added a satellite dish, solar energy equipment, a 20-30 foot concrete swimming pool, and a rock wall with iron gates enclosing most of the 1-3/4 acre lot on which their home rested. Additionally, Delores wore new, expensive clothes to work on a daily basis. As of April 6, 1983, petitioners owed $ 2,200 to attorney Michael Benevidez (hereinafter Benevidez) for personal legal services rendered. During 1984 petitioner performed automobile body work for Benevidez in satisfaction of $ 2,000 of the indebtedness *117 owed to him. During 1985, petitioner traded a set of four tires to Benevidez in satisfaction of a debt owed to him of not less than $ 200. Petitioners failed to report any income in connection with these bartering transactions on either their 1984 or 1985 Federal income tax returns. In 1980 petitioner and Tony Gonzales purchased 2.5 acres of real estate located in Leesburg, New Mexico, as tenants in common (hereinafter referred to as the Leesburg property). The property was purchased for $ 21,500, with a cash downpayment of $ 1,050. Petitioner's monthly payment for the property amounted to $ 140. There is no further credible evidence regarding this or later related transactions concerning the Leesburg property. In 1986 respondent's agent Kent Thomas (hereinafter Thomas) initiated a criminal tax fraud investigation of petitioner in connection with a larger narcotics investigation. The allegation stated that petitioner was a narcotics dealer living beyond his reported income. The alleged violation was that of making and subscribing false returns, a violation of section 7206(1) which is entitled "Declaration under Penalties of Perjury." Petitioners' home was put under surveillance, *118 wire taps were placed on petitioners' and the partnership's telephone lines, and multiple visitors to petitioners' home were later picked up and arrested for possession of cocaine. Thomas subsequently left the Internal Revenue Service for other employment. Special Agent Alvan Romero (hereinafter Romero) was then assigned to the criminal tax investigation. Romero subsequently prepared a Discontinued Investigation Report, dated September 25, 1987, citing a potential de minimis tax liability in addition to insufficient evidence establishing criminal tax fraud. Romero filled out this report in reliance upon the de minimis numbers in issue, without consulting the file boxes of information gathered by Thomas during the investigation. On the report regarding "Evidence which supports the assertion of civil fraud penalty," Romero checked the box labelled "None." For purposes herein, respondent contends that petitioners had unreported taxable income for the taxable years in issue. After post-trial concessions, respondent computed petitioners' taxable income in the following manner: 1983
1984
1985
Wife's wages
$  9,732
$ 10,753
$ 14,335 Unexplained bank deposits
14,354
19,711
11,688 Guaranteed payments
6,678
6,402
7,200 Bartering income
-0-
2,000
400 Distributive share of net
partnership income/(loss)
3,325
2,549
(2,019)
Total taxable income
$ 34,089
$ 41,415
$ 31,604 Income per return
9,732
10,753
14,335 Difference [Total
$ 24,357
$ 30,662
17,269 unreported taxable
income from all sources]
*119 Respondent also contends that petitioners are liable for additions to tax as stated above and for self-employment taxes on amounts representing unexplained bank deposits, guaranteed payments, and petitioner's distributive share of net partnership income. Petitioners contest respondent's method of reconstructing the partnership's profits and losses. They contend that respondent failed to properly credit the partnership with nonpartnership income deposited into partnership accounts, transfers among partnership accounts, amounts allegedly embezzled from the partnership by Tony Anaya, and double counting of cash items. They also contend that respondent failed to give the partnership credit for depreciation deductions for known partnership property and also failed to give them credit for cost of goods sold in all three years in question. Petitioners additionally contend that, regarding their personal accounts, respondent's method of computing their gross income resulted in double counting of cash items. OPINION At the outset, we find it necessary to ascertain which party bears the burden of proving and going forward with the evidence to decide the substantive issues before us. *120 Petitioners contend that respondent was arbitrary and capricious in his determination, including the manner in which he utilized the bank deposits method of computing petitioners' income. Petitioners further contend that, because of this, respondent bears the burden of proof, which we treat as a contention that respondent bears the burden of going forward, regarding all issues, not merely the civil fraud issue. Petitioners cite Helvering v. Taylor, 293 U.S. 507, 79 L. Ed. 623, 55 S. Ct. 287 (1935), as support for their contention. In the instant case, petitioners failed to maintain books or records sufficient to establish the amount of their gross income. See sec. 1.6001-1(a), Income Tax Regs. Because of this, respondent used the bank deposits and cash expenditures method in determining petitioners' income. It is well established that when a taxpayer keeps no books or records, has only inadequate books or records, or deliberately destroys his records, respondent may compute income by whatever method will clearly reflect the taxpayer's income. Sec. 446; Conforte v. Commissioner, 74 T.C. 1160, 1201-1202 (1980), affd. in part 692 F.2d 587 (9th Cir. 1982); *121 Harbin v. Commissioner, 40 T.C. 373, 377 (1963). The use of the bank deposits and cash expenditures method for computing income has long been sanctioned by the courts. Petzoldt v. Commissioner, 92 T.C. 661, 687 (1989); Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). We find that, given the facts and circumstances of the record before us, respondent's use of the bank deposits and cash expenditures method was not arbitrary, capricious, or excessive but instead was clearly appropriate. Halle v. Commissioner, 7 T.C. 245 (1946), affd. 175 F.2d 500 (2d Cir. 1949). Therefore, aside from the issue of whether petitioners are liable for additions to tax under section 6653(b)(1), it is petitioners who must shoulder the burden of proof, as well as the burden of going forward, with respect to the other issues before us. Rule 142(a). ISSUE 1: WHETHER AND TO WHAT EXTENT UNEXPLAINED DEPOSITS CONSTITUTE TAXABLE INCOME TO PETITIONERS. Unidentified deposits and cash expenditures form the basis of respondent's computation of petitioners' *122 unexplained income. A bank deposit is prima facie evidence of income and respondent need not prove a likely source of that income. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). The amounts of the unidentified deposits have been stipulated and virtually all of the amounts representing cash expenditures have also been stipulated. Petitioner asserts that certain adjustments should be made to reduce the amount of deposits that are subject to Federal income tax. Certain of these adjustments, such as those reflecting petitioners' receipt of Federal income tax refunds, have been accounted for by stipulation of the parties. Petitioner contends that additional adjustments are necessary to reflect alleged nontaxable sources. Initially, petitioner claims that a cash deposit adjustment is in order. This is based on petitioner's claim that cash withdrawn at the time of making deposits was redeposited at a later date. Petitioner contends that respondent's failure to recognize this has resulted in double counting by respondent in his determination that all deposits represent potential (prima facie) taxable income. Thus, petitioner seeks cash deposit downward adjustments *123 in the amounts of $ 2,400 and $ 660 for 1983 and 1984, respectively. We find no persuasive evidence indicating that these amounts were redeposited. Inasmuch as the record contains no evidence of the form of payment for many of petitioner's family expenses such as food, gasoline, and clothing, it is safe to assume that some or all of the cash withdrawals were used to pay for these expenses rather than redeposited at a later date. Next, petitioner contends that respondent's bank deposits computation does not properly account for installment payments received under contract for the sale of petitioner's undivided one-half interest in 2.5 acres of land located in Leesburg, New Mexico. Petitioner asserts that he sold his one-half interest to his co-owner, Tony Gonzales, at a loss during 1983. Petitioner claims that he received cash installment payments from Gonzales in the amounts of $ 2,000 in 1983, $ 1,000 in 1984, and $ 890 in 1985. Thus, petitioner contends that respondent's unexplained deposits calculation failed to account for this and should be credited with the amount of cash petitioner received from Gonzales each year. Although the record contains a written real estate contract *124 under which petitioner and Gonzales purchased their interests in the Leesburg, New Mexico, property, noticeably absent from the record is a written contract or other document reflecting the terms under which petitioner sold his one-half interest to Gonzales during 1983. Nor is there any evidence of the payments made by Gonzales to petitioner. Gonzales testified to the terms under which he purchased petitioner's one-half interest. This testimony was vague and unsatisfactory. Moreover, Gonzales testified that petitioner has not yet transferred his one-half interest to Gonzales, but that petitioner will do so when "it is paid up." We are not obligated to accept testimony of interested parties or witnesses that is not credible and is not corroborated by any other evidence. Davis v. Commissioner, 88 T.C. 122, 140-141 (1987), affd. 866 F.2d 852 (6th Cir. 1989); Tokarski v. Commissioner, supra at 77; Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978). Accordingly, petitioners are not entitled to these claimed annual adjustments because we find that they have failed to meet their burden of proof. Petitioners *125 claim that an adjustment should be made for respondent's failure to prove a likely taxable source of the remaining unexplained deposits. Petitioner testified that his only source of income during the years before us was from the A & A Tire partnership activities. Moreover, petitioner asserts that no one, not even respondent's agents, knew of a source for the unexplained deposits. Petitioner seems to have forgotten that respondent's agents were investigating a possible source of that income in their criminal fraud investigation, but, due to a personnel change and a potentially de minimis tax liability (relatively speaking) that investigation was abandoned. However, there is sufficient evidence herein to suggest another possible source of petitioners' unreported income thereby refuting petitioners' repeated contention as stated above. We stress, however, that respondent is under no obligation to name a source for bank deposits. Petitioners carry the burden of proving a nontaxable source. Otherwise, bank deposits are prima facie evidence of taxable income. Tokarski v. Commissioner, supra.
ISSUE 2: WHETHER CERTAIN GUARANTEED PAYMENTS THAT PETITIONER *126 RECEIVED FROM A & A TIRE DURING 1983, 1984, AND 1985 CONSTITUTE TAXABLE INCOME. Guaranteed payments are those payments made to a partner for services, without regard to the income of the partnership, and are includable in the recipient's gross income. Sec. 707(c). The parties have stipulated that petitioner deposited guaranteed payments which he received from A & A Tire into several of his bank accounts in amounts totalling $ 6,678 in 1983, $ 6,402 in 1984, and $ 7,200 in 1985. Petitioner failed to report these amounts on his Federal income tax returns. Respondent determined that these guaranteed payments constitute unreported ordinary income taxable to petitioner. Respondent is sustained. ISSUE 3: WHETHER PETITIONER FAILED TO INCLUDE IN HIS COMPUTATION OF TAXABLE INCOME HIS DISTRIBUTIVE SHARE OF A & A TIRE PARTNERSHIP INCOME/(LOSS) DURING EACH OF THE YEARS AT ISSUE. Gross income includes a distributive share of partnership gross income. Sec. 61(a)(13). Each partner must report his or her distributive share of partnership income. Sec. 702(a). To reflect respondent's post-trial concessions, respondent, on brief, recomputed petitioner's alleged net distributive share of *127 A & A Tire partnership income/(loss). This recomputation resulted in net amounts of $ 3,325 for 1983, $ 2,549 for 1984, and ($ 2,019) for 1985. Petitioners contend that respondent's recomputations of partnership income/(loss) for each of the years in question fail to fully reflect all adjustments to partnership income to which they are entitled. Petitioners assert they are entitled to the following adjustments: (a) Elimination of the double counting of cash items in computing partnership income; (b) elimination of nontaxable/personal deposits; (c) allowance for depreciation of the partnership building and equipment; (d) proper analysis of cost of goods sold; and (e) adjustment for amounts embezzled from A & A Tire. Petitioners assert that, after all of the adjustments to which they are purportedly entitled are made, the partnership actually experienced losses in each of the years in question. We find that the record is inconclusive regarding whether the partnership incurred profits or losses during 1983 and 1984. Respondent has conceded the partnership sustained a loss for the taxable year 1985. The amounts computed by respondent would normally be sustained since petitioners *128 have failed in their burden of proving the partnership also sustained losses in 1983 and 1984. However, respondent failed to credit the partnership with any deductions for depreciation. Although petitioners did not have receipts for equipment or positive proof of an adjusted basis in the partnership building, it is clear the building and certain equipment existed. It is also clear that the partnership had some basis in this property and should be allowed a depreciation deduction. We are not in a position to pull numbers from the air in order to allow a depreciation deduction. The schedule offered by petitioners is not credible evidence. However, we note that respondent's proposed partnership profits for 1983 and 1984 are de minimis in nature. Any profits were distributed out to the partners and not retained by the partnership. These amounts are well within, and presumably contributed to, the unexplained bank deposits made by petitioners. Therefore, we find that petitioner's share of partnership profits allegedly present in 1983 and 1984 has been previously accounted for in the unexplained deposits included in petitioners' gross income. As part of his post-trial concession, *129 respondent recomputed the amount of petitioner's net distributive share of A & A Tire partnership income/loss which he determined to be a loss of $ 2,019 for 1985. However, respondent has taken the position that because petitioner has failed to establish his adjusted basis in his partnership interest as of January 1, 1985, petitioner is not entitled to deduct his distributive share of A & A Tire's 1985 loss. We disagree because we find that petitioner's basis in his partnership interest exceeded his distributive share of A & A Tire's 1985 partnership loss. Section 752(a) provides: Any increase in a partner's share of the liabilities of a partnership, or any increase in a partner's individual liabilities by reason of the assumption by such partner of partnership liabilities, shall be considered as a contribution of money by such partner to the partnership.
Section 722 provides that a contribution of money by a partner to the partnership increases basis in the partnership. Moreover, as to the years at issue, a partner's share of partnership liabilities shall be determined in accordance with his ratio for sharing losses under the partnership agreement. See former sec. 1.752-1(e), *130 Income Tax Regs.
There is nothing in the record to indicate that the Anaya brothers ever entered into a written partnership agreement. However, Tony Anaya testified that, with respect to the partnership profits and losses, he and his two brothers agreed "to share everything one-third each." The terms of the partnership agreement may be either oral or written. Sec. 1.761-1(c), Income Tax Regs.
In 1983 petitioner, Tony, and Joe signed a $ 22,000 loan note, the proceeds of which were utilized to purchase real estate which was used in connection with the partnership's business. Therefore, petitioner is entitled to a $ 7,333.33 upward adjustment to his basis in 1983, reflecting his one-third share of the $ 22,000 partnership liability, the proceeds of which were used in furtherance of the partnership's business. Sec. 722; sec. 752(c). Although the upward basis adjustment occurred in 1983, there is nothing in the record to warrant a downward adjustment in petitioner's basis for either 1983 or 1984. Because petitioner's basis at the end of taxable year 1985 clearly exceeded his distributive share of the partnership loss for that year, petitioner is entitled to deduct his share of *131 the partnership loss for taxable year 1985. Sec. 704(d). ISSUE 4: WHETHER CERTAIN BARTERING INCOME CONSTITUTED TAXABLE INCOME TO PETITIONERS IN THE AMOUNTS OF $ 2, 000 IN 1984 AND $ 400 IN 1985. Except as otherwise provided by law, gross income includes all income from whatever source derived. Sec. 61. Gross income therefore includes income realized in any form, whether money, property, or services. Sec. 1.61-1(a), Income Tax Regs. Thus, if services are paid for in exchange for other services or property, the fair market value of the other services or property taken in payment must be included in income as compensation. Sec. 1.61-2(d)(1), Income Tax Regs.
During 1983, petitioners owed their former attorney, Michael Benevidez, a total of $ 2,200 for personal legal services rendered. Petitioners have stipulated that petitioner entered into bartering transactions with Benevidez in 1984 and 1985. These bartering transactions included performing auto body work in 1984 and trading a set of tires in 1985 for indebtedness owed to Benevidez in the amounts of $ 2,000 and $ 200, respectively. There is no evidence that petitioners had any tax basis in the tires. *132 Therefore, we find that petitioners realized income in the respective amounts of $ 2,000 and $ 200 during the taxable years 1984 and 1985. Because petitioners failed to include these items in their gross income, respondent is sustained on this issue. ISSUE 5: WHETHER PETITIONERS ARE LIABLE FOR THE SELF-EMPLOYMENT TAX UNDER SECTION 1401. Section 1401 provides that a tax shall be imposed, in addition to other taxes, on the self-employment income of every individual. Self-employment income generally includes an individual's net earnings from self-employment in any trade or business, a partner's distributive share of income or loss from any trade or business carried on by a partnership of which he is a member, and guaranteed payments. Sec. 1402; secs. 1.1402(a)-1 and 1.1402(a)-2, Income Tax Regs.
Respondent determined that petitioners are liable for self-employment taxes on amounts representing unexplained deposits, guaranteed payments received from A & A Tire, and petitioner's distributive share of A & A Tire income. Petitioner testified that his only source of income during the years before us was from the A & A Tire partnership activities. There is no conclusive evidence in *133 the record proving that petitioner had a source of income other than from self-employment activities for the years in question. Moreover, petitioners have altogether failed to address or otherwise rebut respondent's determination of self-employment taxes. See Kasey v. Commissioner, 33 T.C. 656, 660 (1960); Rule 142(a). We sustain respondent's determination that petitioners are liable for self-employment tax on the amounts reflecting unexplained bank deposits and guaranteed payments because we find that these amounts represent self-employment income. ISSUE 6: WHETHER PETITIONERS ARE LIABLE FOR ADDITIONS TO TAX UNDER SECTION 6653(b)(1). We must decide whether any portion of the underpayment of taxes due from petitioners for each of the years at issue was due to fraud with the intent to evade tax within the meaning of section 6653(b)(1). Petitioner contends that the Special Agent's report dated September 1987, discontinuing a criminal fraud investigation then pending against petitioner, effectively bars respondent's assertion of a civil fraud claim against petitioner because the Special Agent's report contains a statement that there exists no "evidence which *134 supports the assertion of civil fraud penalty." This statement, petitioner contends, is tantamount to an admission against respondent's interest. Thus, petitioner argues that respondent is precluded from determining a civil fraud addition for any of the years before the Court. The statements contained in respondent's report merely indicate that, as of September 1987, there was insufficient evidence in respondent's possession which would have allowed respondent to prevail in determining the civil fraud addition against petitioner. Respondent's notice of deficiency, which included a determination that petitioners were liable for the civil fraud addition, was timely mailed on April 6, 1988. It is possible new evidence supporting the civil fraud addition came to light in the interim. This is a finding we need not make because, as a general rule, this Court will not look behind the deficiency notice to examine the administrative procedure involved in making respondent's determination. Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). Nor do we find anything in the record compelling us to do so. See Berkery v. Commissioner, 91 T.C. 179, 186 (1988), *135 affd. 872 F.2d 411 (3d Cir. 1989). Nevertheless, respondent has the burden of proving, by clear and convincing evidence, that some part of the underpayment for each year was due to fraud. Sec. 7454(a); Rule 142(b). Thus, respondent must prove that an underpayment exists and that some portion of the underpayment is attributable to fraud. Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989). In the instant case, the parties have stipulated to one source (A & A Tire Partnership) of the unreported income which resulted in an underpayment of Federal income tax for each of the years in question. See Holland v. United States, 348 U.S. 121, 99 L. Ed. 150, 75 S. Ct. 127 (1954); Doncaster v. Commissioner, 77 T.C. 334, 337-338 (1981); Rule 91(e). Therefore, we need only decide whether respondent has proved by clear and convincing evidence that some portion of the underpayment is due to fraud. If fraud is established, then the addition as to the years at issue is applied to the entire deficiency, not merely to that portion of the underpayment which is the result of fraud. Fraud is defined as an intentional wrongdoing with the specific intent *136 to evade tax believed to be due and owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Brooks v. Commissioner, 82 T.C. 413, 431 (1984), affd. without opinion 772 F.2d 910 (9th Cir. 1985). Because it is seldom possible to do so by direct proof of intention, fraudulent intent is derived from an examination of the taxpayer's entire course of conduct as revealed by the record. This examination consists of marshalling and evaluating the relevant indicia, or badges, of fraud. A consistent pattern of understating income over a period of years, especially when accompanied by other circumstances showing an intent to conceal, is persuasive evidence of a fraudulent intent to evade tax for each of the years. Brooks v. Commissioner, supra.We have already found that petitioner completely failed to report his taxable income from the A & A Tire partnership for each of the years in question. This income was frequently paid to petitioner in cash. Petitioner also paid many of his personal expenses in cash. Dealings in cash to avoid scrutiny of finances are evidence of an intent to conceal. *137 Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. a Memorandum Opinion of this Court. Failure to maintain accurate books and records may also indicate the existence of fraud. Otsuki v. Commissioner, 53 T.C. 96, 109 (1969). We find it rather curious that the few A & A Tire financial records that somehow survived and are extant in the record before us all contain rounded figures and reflect purported tax benefits accruing to petitioner, e.g., one-page summary depreciation schedules and profit and loss statements indicating annual losses. Yet, the documents upon which these summarized financial statements are based were not made part of the record and the testimony regarding their existence can best be described as vague, sketchy, conflicting, and altogether unconvincing. Another indication of the presence of fraud is the acquisition of substantial assets when the taxpayers report small amounts of gross income. Brooks v. Commissioner, supra at 433. Petitioners reported wages and salary income of $ 9,732, $ 10,753, and $ 14,335 for 1983, 1984, and 1985, respectively. These amounts represented Delores' *138 salary, which was petitioners' only source of reported income. In 1983 petitioners moved into their new home. The mortgage payment on this house alone was $ 200 more than Delores' monthly take-home pay. Moreover, petitioners made substantial improvements to their new home during the years at issue. In addition to their monthly mortgage payment, petitioners made monthly auto loan payments of at least $ 323, supported at least two children during each of the years in issue, and took annual vacations. Inconsistencies between the income reported on financial statements prepared by a taxpayer and the income as reported on his returns is another indicia of fraud. Romm v. Commissioner, 245 F.2d 730, 734 (4th Cir. 1957), affg. in part and remanding in part a Memorandum Opinion of this Court. When dealing with financial institutions in connection with loan applications, petitioner listed A & A Tire income while simultaneously failing to report the A & A Tire income on his Federal income tax returns during the years in issue. Petitioner also received his distributive share of profits and guaranteed payments from A & A Tire, but he failed to report it. This total *139 failure to report income from the partnership is a badge of fraud. Agnellino v. Commissioner, 302 F.2d 797, 801 (3d Cir. 1962), affg. in part and vacating in part a Memorandum Opinion of this Court. Yet another badge of fraud revealed in the record is petitioner's failure to cooperate with respondent's agents. Petitioner testified that he refused to answer questions put to him by respondent's agent Thomas. Petitioner's failure to cooperate bears upon his intent to evade the payment of Federal income taxes. See Bradford v. Commissioner, supra at 307. Finally, we note that, in response to respondent's determination of the civil fraud addition, petitioner contends that because his brother Tony prepared their income tax returns for each of the years in issue, petitioner did not file them with the intent to evade tax because he relied upon Tony's extensive accounting background, training, and knowledge in preparing petitioner's tax returns. Tony chose to treat petitioner's guaranteed payments as nontaxable draws when preparing petitioner's tax returns, yet Tony testified that he knew the guaranteed payments were taxable income. However, Tony *140 did not testify as to whether he also advised petitioner that the guaranteed payments were nontaxable draws or were, in fact, taxable income. On brief, petitioner asserts that "obviously [Tony] told Raymond and Joe Anaya that the guaranteed payments were nontaxable draws." This assertion simply finds no support in the record before us. Indeed, Special Agent Thomas testified that when he questioned Tony as to what Tony told petitioner regarding the taxability of the guaranteed payments, Tony refused to answer the question. Even if petitioner blindly relied upon Tony's advice, petitioner's professed ignorance was a product of conscious choice rather than naivete because petitioner was an integral part of A & A Tire's success, was one of its business partners, and had access to its bank account. Petitioner signed his bare bones tax returns including little or no mention of his business. Since little or no information from the partnership was included on the returns, there was no need for an accounting background to supply the numbers, since few numbers were supplied. Moreover, A & A Tire's profit and loss statements indicate purported net losses for each year at issue, yet petitioner's *141 distributive share of the losses only appears on his 1983 Federal income tax return. Even the most cursory comparison of the A & A Tire profit and loss statements and petitioner's 1984 and 1985 Federal income tax returns, all of which were prepared by Tony, should have alerted petitioner to the discrepancies. Based on the foregoing, we find that petitioner was not justified in relying upon Tony's "expertise" in preparing his Federal income tax returns. Based upon the cumulative weight of the facts and circumstances in the record before us, we conclude that the understatements in income for each of the years in question were for the purpose of evading tax and find that petitioners' 1983, 1984, and 1985 Federal income tax returns were false and fraudulent and were made with the intent to evade tax. Therefore, respondent's determinations pursuant to section 6653(b)(1) are sustained. ISSUE 7: WHETHER PETITIONERS ARE LIABLE FOR ADDITIONS TO TAX UNDER SECTION 6661 FOR SUBSTANTIAL UNDERSTATEMENTS OF INCOME TAX. The term substantial understatement is defined as the greater of 10 percent of the tax required to be shown on the return for the taxable year or $ 5,000. Sec. 6661(b)(1). *142 Based upon respondent's concessions and our redetermination of petitioners' Federal income tax liabilities, we find that petitioners' taxes were substantially understated, within the meaning of section 6661, for the years 1983 and 1984, but not for 1985. Therefore, petitioners are liable for the addition to tax pursuant to section 6661 for the years 1983 and 1984. ISSUE 8: WHETHER THE STATUTE OF LIMITATIONS BARS ASSESSMENT AND COLLECTION OF PETITIONERS' TAX LIABILITY FOR THE TAXABLE YEAR ENDING DECEMBER 31, 1983. There is no limit on the period of time in which the assessment and collection of tax can be made for a particular taxable year when a fraudulent Federal income tax return is filed for that year. Sec. 6501(c)(1); Estate of Temple v. Commissioner, 67 T.C. 143, 159-160, 164 (1976). Because we have found that petitioners filed a fraudulent 1983 Federal income tax return, the statute of limitations does not bar respondent's assessment and collection of petitioners' 1983 Federal income tax liability. ISSUE 9: WHETHER PETITIONER WIFE IS ENTITLED TO "INNOCENT SPOUSE" RELIEF UNDER SECTION 6013(e). The question of Delores' liability was raised by petitioners *143 in their petition, wherein they maintained that "Mrs. Anaya is entitled to innocent spouse relief for any deficiency which may result herein." Petitioners apparently have abandoned this issue because they failed to address the issue at trial. Not only did she fail to testify, but there was no other evidence relating to the issue presented during the course of the trial. Furthermore, the issue was not addressed by petitioners on brief. Therefore, we consider the issue to be waived. Walker-Scott Corp. v. Commissioner, 35 T.C. 34, 35 (1960); compare Marcus v. Commissioner, 22 T.C. 824, 832 (1954); Rule 149(b). In view of the foregoing, Decision will be entered under Rule 155. APPENDIX
1983
1984
1985
Bank Deposit Transactions: Account Number 22689-03
$ 21,844 $  5,569 $    -0- Account Number 22689-4-0
-0- 11,195 17,201 Account Number 08-800333-7
51,583 -0- -0- Account Number 000242-8
22,958 14,568 21,227 Account Number 22689-00
706 65 556 TOTAL BANK DEPOSITS
FROM PERSONAL ACCOUNTS:
$ 97,091 $ 31,397 $ 38,984 Sources of Deposits:
Salary-Delores Anaya
$  7,911 $  8,688 $ 11,481 A & A Tire Service Guaranteed
Payment
6,678 6,402 7,200 Sale of Mobile Home
1,100 1,200 1,200 Home Construction Loan
63,842 -0- -0- Child Support Payments
433 346 500 Sale of Home-Delores Anaya
2,640 -0- 6,200 Transfers
133 866 322 Federal Income Tax Refund
401 1,190 901 State Tax Refund
-0- 1,482 100 Memorial General
-0- 41 -0- TOTAL:
$ 83,138 $ 20,215 $ 27,904 Cash Payments: Las Cruces Transit
$ -0- $ 2,598 $ -0- Brockwood Furniture
-0- 363 -0- Mesilla Valley Diamond
-0- 241 -0- Service Merchandise
-0- 1,495 588 Rock wall Construction
-0- 4,000 -0- TOTAL:
$ -0- $ 8,697 $ 588 Unexplained Deposits: Total Bank Deposits
$ 97,091 $ 31,397 $ 38,984 - Sources of Deposits
(83,138)
(20,215)
(27,904)
+ Cash Payments
-0- 8,697 588 = Unexplained deposits
$ 13,953 $ 19,879 $ 11,668 *144 Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. It is not clear from the record how much the mortgage was or to whom it was payable.↩